UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

NOJIR JEFFRIES,

    Plaintiff,

    v.       CAUSE NO. 3:24-CV-941-GSL-JEM

J. NOWATZKE, et al.,

    Defendants.

## OPINION AND ORDER

Nojir Jeffries, a prisoner without a lawyer, filed an amended complaint under 42 U.S.C. § 1983. (ECF 3.) In accordance with 28 U.S.C. § 1915A, the court must screen the amended complaint and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. To survive dismissal, a complaint must contain sufficient factual matter to state a claim that is "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because Jeffries is proceeding without counsel, the court must give his allegations liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

## FACTS

Jeffries is an inmate at New Castle Correctional Facility. In June 2023, when he was an inmate at Indiana State Prison (ISP), he was found guilty of possessing a cell

phone in violation of the prison's disciplinary code. He lost earned credit time and certain privileges. Later that month, he was told by ISP's Acting Warden J. Nowatzke that he was being transferred to the administrative restrictive housing unit. He claims he did not meet the criteria for restrictive housing but was transferred anyway. While in restrictive housing, he filed grievances complaining about the transfer. He claims that in retaliation, Warden Nowatzke had his electronic tablet shut off, meaning he could not order commissary items or access legal materials for approximately a month. In July 2023, Warden Nowatzke decided to transfer him to another facility. Jeffries claims there was no legitimate reason for the transfer and, instead, he believes it was in retaliation for his grievances.

On August 15, 2023, he was transferred to the "transition unit" at New Castle, which he claims is restrictive housing "by a different name." He is required to be in his cell 22 hours a day and does not have the opportunity to participate in programs or classes. He claims staff at New Castle have approved him to be released to general population, but IDOC Commissioner Christina Reagle, Deputy Commissioner James Basinger, Executive Director of Adult Facilities Richard Brown, and Executive Director of Classification Jack Hendricks refuse to authorize his release. He believes they have labeled him "a disruptive troublemaker" for filing grievances and appeals. Based on these events, he sues multiple defendants for money damages and other relief.

## ANALYSIS

Jeffries first asserts that his Due Process rights were violated in connection with his transfer to and continued detention in restrictive housing. The Fourteenth

Amendment Due Process Clause does not create a liberty interest in avoiding transfer within a correctional facility or in remaining in the prison's general population. *See Wilkinson v. Austin*, 545 U.S. 209, 222 (2005); *Sandin v. Conner*, 515 U.S. 472 (1995). Instead, Due Process protections are only required when a liberty interest is at stake. *Sandin*, 515 U.S. at 484-85. To trigger a liberty interest, an inmate must be subjected to a "significant and atypical hardship" in relation to the ordinary incidents of prison life. *Id*. at 476. There is no firm rule as to the amount of time that must be spent in segregation to trigger a liberty interest, and instead courts must "look to both the duration of the segregation and the conditions endured." *Lisle v. Welborn*, 933 F.3d 705, 721 (7th Cir. 2019); *see also Kervin v. Barnes*, 787 F.3d 833, 836 (7th Cir. 2015).

Jeffries was in restrictive housing at ISP from June 2023 to August 2023, a period of roughly two months. He does not describe any of the conditions there for the court to plausibly infer that he was subjected to a "significant and atypical hardship" in relation to the ordinary incidents of prison life. *Id*. at 476. He was already in segregation when he was transferred to New Castle, making it questionable that he had a liberty interest in avoiding the transfer. *Lagerstrom v. Kingston*, 463 F.3d 621, 623 (7th Cir. 2006) ("*Wilkinson* is derived from the drastic change in the conditions of confinement. That kind of change might not be present if, for example, the inmate was already confined to segregation."). Furthermore, the only conditions he describes at New Castle are having to be in his cell most of the day and not being allowed to participate in programs and classes like other inmates. Based on his allegations, the court cannot plausibly infer that

3

he is experiencing a "significant and atypical hardship" in relation to the ordinary incidents of prison life. *Id*. at 476.

Even assuming he plausibly alleges the existence of a liberty interest, the demands of Due Process are not onerous in this context and inmates are only entitled to "some informal, nonadverserial" process.[1] *Westefer v. Neal*, 682 F.3d 679, 684-85 (7th Cir. 2012). Informal due process requires "some notice" of the reason for the inmate's placement in long-term segregation and an opportunity to present his views. *Id.* The inmate is also entitled to periodic reviews of his placement. *Id.* The frequency of such review is "committed to the administrative discretion of prison officials." *Id.* at 685. Review procedures "need only be sufficiently frequent that administrative segregation does not become a pretext for indefinite confinement." *Id.* at 686 (citation omitted). In short, "the requirements of informal due process leave substantial discretion and flexibility in the hands of the prison administrators." *Id.* at 685.

Jeffries appears to complain that he was not given a full hearing before his transfer, similar to a disciplinary proceeding, but this was not a right he was entitled to under applicable law. *Westefer*, 682 F.3d at 684-85. He was entitled to some opportunity to present his views about his placement, but it is clear from his allegations that he was told the reason for his placement—his conduct—and that he had an opportunity to present his views through grievances and classification appeals. It is also apparent from his allegations that he is receiving periodic reviews of his placement; he believes they

---

[1] The court notes that the usual remedy for a Due Process violation is nominal damages. *Calhoun v. DeTella*, 319 F.3d 936, 941 (7th Cir. 2003); *Saxner v. Benson*, 727 F.2d 669, 672 (7th Cir. 1984).

4

are perfunctory and not frequent enough, but the requirements of "informal due process" afford "substantial discretion and flexibility" to prison officials. *Id.* The court cannot plausibly infer from his allegations that he has been denied the minimal requirements of Due Process in connection with his placement.

He also purports to bring an Equal Protection claim. Specifically, he claims he was treated more harshly than four other inmates who were also found guilty of possessing a cell phone at ISP; he was sent to restrictive housing, whereas they allegedly received only minor punishments. To assert an Equal Protection claim, a plaintiff must allege that a state actor purposely discriminated against him on a prohibited basis, such as his race or sex. *See McCleskey v. Kemp*, 481 U.S. 279, 292 (1987); *Williams v. Dart*, 967 F.3d 625, 637 (7th Cir. 2020). If the disparate treatment is not based on a prohibited ground, it is permissible as long as it is not irrational. *Stevens v. Illinois Dept. of Transp.* 210 F.3d 732, 737-738 (7th Cir. 2000). In the prison context, "prison administrators may treat inmates differently as long as the unequal treatment is rationally related to a legitimate penological interest." *Flynn v. Thatcher*, 819 F.3d 990, 991 (7th Cir. 2016).

A plaintiff can also state a "class-of one" Equal Protection claim by alleging that he was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Word v. City of Chicago*, 946 F.3d 391, 395–96 (7th Cir. 2020). However, "even at the pleading stage, a plaintiff must anticipate the burden of eliminating any reasonably conceivable state of facts that could provide a rational basis for the government's actions," and must "provide a sufficiently plausible

5

basis to overcome the applicable presumption of rationality." *Walker v. Samuels*, 543 F. App'x 610, 611 (7th Cir. 2013). Additionally, class-of-one claims cannot be used to challenge discretionary decisions that are "based on a vast array of subjective, individualized assessments." *Engquist v. Oregon Dept. of Agriculture*, 553 U.S. 591, 603 (2008). In the prison context, "choosing when and how to apply discipline [to a prisoner] are discretionary decisions falling under *Engquist*." *Atkinson v. Mackinnon*, No. 14-CV-736-BBC, 2015 WL 506193, at *1 (W.D. Wis. Feb. 6, 2015).

Jeffries does not describe any intentional discrimination he suffered based on a prohibited ground. He also does not provide any details about the other inmates who were found with cell phones—such as their offense of conviction or disciplinary record—for the court to plausibly infer that they were similarly situated to him in a meaningful way. Public records reflect that Jeffries is serving a sentence for a violent offense, and he acknowledges that he has a prior record of discipline.[2] In fact, he was previously found guilty of drug trafficking while in prison and used a cell phone to facilitate the offense. *See Jeffries v. Neal*, 737 F. App'x 791, 792 (7th Cir. 2018). Prison officials' discretionary decision to impose a different form of discipline against Jeffries based on his particular circumstances and conduct history does not give rise to a plausible Equal Protection claim. *Engquist*, 553 U.S. at 603; *Atkinson*, 2015 WL 506193, at *1.

---

[2] Jeffries is serving a 65-year sentence for murder. *State v. Jeffries*, No. 27C01-0506-MR-000100 (Grant Cir. Ct. closed Feb. 24, 2006). The court is permitted to take notice of public records at the pleading stage. *Tobey v. Chibucos*, 890 F.3d 634, 647 (7th Cir. 2018).

He further asserts that he was subjected to unlawful retaliation. To state a First Amendment retaliation claim, an inmate must allege: "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the [defendant's] decision to take the retaliatory action." *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012).

Jeffries alleges that Warden Nowatzke retaliated against him for filing grievances about his transfer to restrictive housing by shutting off his electronic tablet,[3] which meant he had no access to legal materials or hygiene products at the commissary for approximately a month, and then transferring him to another facility. His amended complaint can also be read to allege that Commissioner Christina Reagle, Deputy Commissioner James Basinger, Executive Director of Adult Facilities Richard Brown, and Executive Director of Classification Jack Hendricks have refused to release him from restrictive housing at New Castle because of grievances he filed. Filing a grievance qualifies as protected First Amendment activity. *Gomez*, 680 F.3d at 866. The adverse actions he describes could "dissuade a reasonable person from engaging in future First Amendment activity." *Perez v. Fenoglio*, 792 F.3d 768, 783 (7th Cir. 2015). He will be permitted to proceed on a First Amendment claim against these defendants.

---

[3] He also sues the "phone coordinator," Ms. Gipson (first name unknown), who executed Warden Nowatzke's order to shut off his tablet, but there is no indication this individual did anything other than perform an administrative function. The court cannot plausibly infer from what he has alleged that she harbored a retaliatory intent in carrying out her duties. *See Gomez*, 680 F.3d at 866.

7

He also claims that Executive Assistant Mark Newkirk mishandled his grievance about his tablet being shut off. "Prison grievance procedures are not mandated by the First Amendment and do not by their very existence create interests protected by the Due Process Clause." *Owens v. Hinsley*, 635 F.3d 950, 953-54 (7th Cir. 2011). Thus, "the alleged mishandling of [a prisoner's] grievances by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Id.; see also Daniel v. Cook Cty.*, 833 F.3d 728, 736 (7th Cir. 2016). To the extent he is trying to pursue a *Monell* claim against Executive Assistant Newkirk's employer due to an alleged practice of mishandling grievances, a *Monell* claim cannot be brought against a state official. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70 (1989). Additionally, liability under *Monell* requires an underlying constitutional violation, and Executive Assistant Newkirk's actions as described in the amended complaint do not amount to a constitutional violation.[4] *See Petty v. City of Chicago*, 754 F.3d 416, 424–25 (7th Cir. 2014).

He also claims that he was denied access to the courts because he had no functioning tablet during his last month at ISP. Inmates have a right of access to the courts grounded in the First and Fourteenth Amendments, but this is not an "abstract, freestanding right." *Lewis v. Casey*, 518 U.S. 343, 351 (1996). Instead, it hinges on whether there was prejudice to a non-frivolous legal claim. *Marshall v. Knight*, 445 F.3d 965, 969 (7th Cir. 2006). Thus, to state a claim, an inmate is required to "spell out" in at least

---

[4] If Executive Assistant Newkirk made the grievance process unavailable to Jeffries in connection with the claims asserted in this case, he may raise that if his exhaustion of administrative remedies becomes an issue at a later stage. *See Woodford v. Ngo*, 548 U.S. 81, 102 (2006). However, for the reasons outlined above, his allegations do not give rise to an independent constitutional claim against Executive Assistant Newkirk.

minimal detail the connection between the defendant's conduct and the resulting prejudice to a potentially meritorious legal claim. *Id.*

Jeffries claims that the loss of his tablet "frustrate[d] and impede[d] Jeffries from bringing this non-frivolous claim." (ECF 3 at 8.) He does not specify what "non-frivolous claim" he is referring to, but he appears to be referring to the claims he is pursuing in this case. He suggests that the loss of a tablet prevented him from obtaining a complaint form, resulting in his original complaint being stricken. (*See* ECF 2.) However, he makes clear in the amended complaint that his tablet was shut off between July 2023 and August 2023, and he did not file this case until November 2024, more than a year later. At that point, he was at an entirely different facility. Furthermore, in the order striking Jeffries' original complaint, the court granted Jeffries an opportunity to amend his complaint and sent him the form he needed. (*Id.*) He has not made the necessary allegations of prejudice to state a plausible access-to-the courts claim.[5]

He also purports to sue the defendants for "Double Jeopardy" violations. He claims he was improperly punished twice for the cell phone offense—once by the hearing officer when he lost earned credit time, and again by Warden Nowatzke when he had him transferred to restrictive housing. The Fifth Amendment Double Jeopardy

---

[5] He makes confusing assertions about being denied Due Process protections in connection with his tablet being shut off, but Due Process protections are only required when a liberty interest is at stake. *Sandin*, 515 U.S. 472, 484-85 (1995). There is no recognized liberty interest in having an electronic tablet while in prison. *See Williams v. Hyatte*, No. 3:22-CV-256-JD-JEM, 2023 WL 144814, at *2 (N.D. Ind. Jan. 10, 2023). He may have had a property interest in the tablet if he used his own money to pay for it, but he has an adequate post-deprivation remedy available under state law to compensate him for any money he lost. *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001) ("[Plaintiff] has an adequate post deprivation remedy in the Indiana Tort Claims Act, and no more process was due.").

Clause, made applicable to the states through the Fourteenth Amendment, provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. CONST., amend V. The Clause prohibits retrials following acquittals. *Richardson v. United States*, 468 U.S. 317, 323-24 (1984). It also "prohibits . . . punishing twice, or attempting a second time to punish criminally, for the same offense." *Witte v. United States*, 515 U.S. 389, 395–96 (1995). Jeffries was not prosecuted twice for the same offense, nor was he *criminally* punished twice for the same offense. He simply had multiple consequences resulting from his conduct in prison. The Double Jeopardy Clause is inapplicable.

He also purports to sue the defendants for "cruel and unusual punishment." A violation of the Eighth Amendment's Cruel and Unusual Punishment Clause consists of two elements: (1) objectively, whether the injury is sufficiently serious to deprive the prisoner of the minimal civilized measure of life's necessities, and (2) subjectively, whether the prison official's state of mind was one of deliberate indifference to the deprivation. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "[T]he Constitution does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), and "not all prison conditions trigger eighth amendment scrutiny—only deprivations of basic human needs like food, medical care, sanitation, and physical safety." *James v. Milwaukee Cty.*, 956 F.2d 696, 699 (7th Cir. 1992). On the second prong, the inmate must allege that the defendant acted with "a culpability standard akin to criminal recklessness." *Thomas v. Blackard*, 2 F.4th 716, 722 (7th Cir. 2021).

10

The factual basis of Jeffries' Eighth Amendment claim is not entirely clear, but it appears to be linked to his current detention in restrictive housing. As he describes it, the environment is not "therapeutic," he must be in his cell most of the day, and he is not permitted to participate in programs or classes. He has not described the type of severe deprivation of a basic human need that would support a plausible Eighth Amendment claim. *James*, 956 F.2d at 696; *see also Caldwell v. Miller*, 790 F.2d 589, 593 n.16 (7th Cir. 1986) ("[M]ere inactivity, lack of companionship and a low level of intellectual stimulation do not constitute cruel and unusual punishment.").

As a final matter, the court is required to effect service over the defendants when the plaintiff is proceeding in forma pauperis. 28 U.S.C. § 1915(d). However, Jeffries is not proceeding in forma pauperis in this case; instead, he opted to pay the filing fee in its entirety. (ECF 5.) Therefore, he is obligated to serve the defendants on his own in any manner permitted by Federal Rule of Civil Procedure 4.

For these reasons, the court:

(1) GRANTS the plaintiff leave to proceed against Acting Warden J. Nowatzke in his personal capacity for money damages for shutting off his electronic tablet and transferring him to another facility in retaliation for grievances the plaintiff filed in violation of the First Amendment;

(2) GRANTS the plaintiff leave to proceed against Commissioner Christina Reagle, Deputy Commissioner James Basinger, Executive Director of Adult Facilities Richard Brown, and Executive Director of Classification Jack Hendricks in their personal capacity for money damages for refusing to release the plaintiff from

11

restrictive housing in retaliation for grievances he filed in violation of the First Amendment;

(3) DISMISSES all other claims;

(4) DISMISSES K. Burke, M. Thate, Mark Newkirk, Deb Abrahms, Gipson, and Pam Bane as defendants; and

(5) ORDERS Acting Warden J. Nowatzke, Commissioner Christina Reagle, Deputy Commissioner James Basinger, Executive Director of Adult Facilities Richard Brown, and Executive Director of Classification Jack Hendricks to respond, as provided in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order once they are properly served.

SO ORDERED on January 24, 2025

/s/Gretchen S. Lund
JUDGE
UNITED STATES DISTRICT COURT